# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

SOLV-EX CORPORATION and JOHN D.
HENTSCHEL, d/b/a CHARTER OAK CAPITAL,

      Plaintiffs,

    v.                                 No. CIV 99-0003 JC/KBM

DEUTSCHE BANK AG, et al.,

      Defendants.

## MEMORANDUM OPINION AND ORDER

THIS MATTER came on for consideration of all outstanding motions in the above-captioned case. *See* Appendix A. The Court has reviewed the motions, the memoranda submitted by the parties and the relevant authorities. The Court finds that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction, *see* Appendix A *(Docs. 71, 75, 79, 99, 96, 143, 147 and 139)*, are well taken and will be granted. The Court further finds that Plaintiffs' Motion to Amend their Complaint, filed July 12, 1999 *(Doc. 132)*, is not well taken and will be denied. All other outstanding motions are denied as moot.

## BACKGROUND

Solv-Ex is a New Mexico corporation that develops processes to extract bitumen which can be upgraded into crude oil. The processes developed and tested by Solv-Ex are considered to be confidential and extremely valuable. Solv-Ex sought to develop a bitumen extraction plant in Alberta, Canada, to take advantage of oil sand leases the corporation held there. In its efforts to build the plant, Solv-Ex hired Charter Oak Capital, co-plaintiff, to assist in obtaining the financing. Solv-Ex alleges that it entrusted Charter Oak with confidential information and that parties interested in providing financing to Solv-Ex were granted access to the information upon entering into a

confidentiality agreement. As per the confidentiality agreement, the information was to be used only for purposes associated with Solv-Ex's financing.

Solv-Ex asserts that the confidential information was not used by Defendants for the purposes of providing financing, but instead was used to destroy Solv-Ex. Specifically, Plaintiffs assert that one set of Defendants--the Short Seller Defendants--fraudulently entered into confidentiality agreements for the purposes of obtaining inside information which was then disseminated to other Defendants in order to drive down the price of Solv-Ex stock. In addition, Solv-Ex asserts that another group of Defendants--the Deutsche Bank Defendants--also acted contrary to the confidentiality agreement by purchasing large amounts of Solv-Ex stock in order to artificially inflate the stock price. Plaintiffs allege that together these actions rendered Solv-Ex unable to obtain financing for the Alberta Plant and eventually forced them declare bankruptcy.

Solv-Ex initiated this lawsuit in New Mexico state court to recover damages suffered as a result of Defendants' actions. Charter Oak joined in the lawsuit as against the Short Seller Defendants to recover lost profits from the failed financing negotiations. In January 1999, the Deutsche Bank Defendants removed the case to this Court on two bases. First, the Deutsche Bank Defendants claim that Solv-Ex egregiously misjoined Charter Oak for the sole purpose of defeating diversity. *See* Notice of Removal, filed January 4, 1999 *(Doc. 1)*. If Charter Oak was dismissed, there would be complete diversity between Solv-Ex and the two sets of Defendants. Second, the Deutsche Bank Defendants claim that Plaintiffs improperly joined two different sets of claims--those against the Deutsche Bank Defendants and those against the Short Seller Defendants. *See id*. Charter Oak asserts no claims against the Deutsche Bank Defendants. Because many of the Short Seller Defendants are incorporated in or residents of California, *see* Appendix B, as is Charter Oak,

if the claims against the two sets of Defendants were severed, there would be complete diversity between Solv-Ex and the Deutsche Bank Defendants.

Consistent with this argument, Defendant Deutsche Morgan Grenfell, Inc. (DMG) filed a motion to sever the claims against the Deutsche Bank Defendants and the Short Seller Defendants. *See* Defendant Deutsche Morgan Grenfell, Inc.'s Motion to Sever, filed March 18, 1999 (*Doc. 39*). Defendant DMG also filed a motion to dismiss; however, as DMG later sought to withdraw that motion, it no longer need be considered. *See* Defendant Deutsche Morgan Grenfell, Inc.'s Motion to Dismiss, filed March 18, 1999 (*Doc. 35*); Defendant Deutsche Morgan Grenfell, Inc.'s Notice of Withdrawal of Motion, filed August 16, 1999 (*Doc. 157*). Subsequently, Plaintiff Solv-Ex filed a motion to remand the case to state court, denying each of Defendants' assertions. *See* Plaintiffs' Motion to Remand, filed April 5, 1999 (*Doc. 60*). Since Plaintiff Solv-Ex's motion to remand, 14 additional motions have been filed, including motions from each of the Defendants moving to dismiss for lack of personal jurisdiction. *See* Appendix A.

## ANALYSIS

### I.     Federal Jurisdiction

Before this court can address any merits of the case, federal jurisdiction must be established. Federal jurisdiction to resolve cases on the merits requires both subject matter jurisdiction over the claim and personal jurisdiction over the parties. Accordingly, the Court will address the jurisdictional motions before reaching any motions to dismiss based on the merits. *See Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 94 (1998) (recalling "a long and venerable" line of cases which reiterated that "the requirement that jurisdiction be established as a threshold matter . . . is inflexible and without exception"). Thus, jurisdiction *must* precede merits in dispositional order. However, the Court must then decide whether to address personal or subject matter jurisdiction first.

In the recent case of *Ruhrgas AG v. Marathon Oil Co.*, the Supreme Court held that there is "no unyielding jurisdictional hierarchy." 526 U.S. 574, 578 (1999). The Supreme Court explained that the issue of personal jurisdiction may be decided first where concerns of judicial economy and restraint override concerns of federalism, thereby warranting immediate dismissal. *See Ruhrgas*, 526 U.S. 574, 587. The Supreme Court stated, however, that where subject matter jurisdiction will involve no arduous inquiry, "both expedition and sensitivity to state courts' coequal stature should impel the federal court to dispose of that issue first." *Id*. at 587-88.

In this case, the question of the court's subject matter jurisdiction involves, if not an "arduous inquiry," certainly a rather complicated one, regarding "fraudulent joinder" of a defendant and the more unusual question of "fraudulent joinder" of a plaintiff. *Id*. at 587. *See also Foslip Pharmaceuticals, Inc. v. Metabolife Intern., Inc.*, 2000 WL 351217 (N.D. Iowa 2000) (fraudulent joinder is difficult question of law). Thus, the "alleged defect in subject-matter jurisdiction raises a difficult and novel question." *Ruhrgas* at 588. On the other hand, this Court "has before it a straightforward personal jurisdiction issue presenting no complex question of state law." *Id*. In essence, an analysis of personal jurisdiction merely requires an examination of the quality and quantity of the defendants' contacts with New Mexico. *See, e.g., Soma Medical Intern. v. Standard Chartered Bank,* 196 F.3d 1292, 1298 (10th Cir. 1999). If Plaintiffs fail to demonstrate personal jurisdiction over Defendants, then the Court need not address the more complicated issue of subject matter jurisdiction. Therefore, because the analysis of personal jurisdiction is less arduous than that of subject matter jurisdiction, the motions to dismiss for lack of personal jurisdiction are properly decided first.

## II.    Defendants' Motions to Dismiss for Lack of Personal Jurisdiction

### A.    Standard

Upon Defendants' motions to dismiss pursuant to FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction, Plaintiffs bear the burden of proving facts that support the Court's exercise of personal jurisdiction.  *See Overton v. United States*, 925 F.2d 1282, 1283 (10th Cir. 1991); *Taylor v. Phelan,* 912 F.2d 429, 431 (10th Cir. 1990); *Behagen v. Amateur Basketball Ass'n of U.S.A.*, 744 F.2d 731, 733 (10th Cir.1984), *cert. denied* 471 U.S. 1010 (1985).  In considering whether Plaintiffs have met their burden, the Court must accept as true the allegations set forth in the complaint to the extent they are uncontroverted by Defendants' affidavits.  *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir. 1987).  However, the Court need only accept as true well pled facts of Plaintiffs' complaint, as distinguished from conclusory allegations.  *See id.*

At this stage of litigation, Plaintiffs need only establish a prima facie showing of personal jurisdiction.  *See Kuenzle v. HTM Sport-Und Freizeitgerate AG*, 102 F.3d 453, 456 (10th Cir.1996).  To establish a prima facie showing of personal jurisdiction over a nonresident defendant in a diversity action, "a plaintiff must show that jurisdiction is legitimate under the laws of the forum state and that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment."  *Far West Capital, Inc. v. Towne,* 46 F.3d 1071, 1074 (10th Cir. 1995).  In this case, New Mexico's long-arm statute establishes the extent of personal jurisdiction exercised by the state.  The long-arm statute provides in pertinent part as follows:

> A.  Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts enumerated in this subsection thereby submits himself or his personal representative to the jurisdiction of the courts of this state as to any cause of action arising from:
>
>> (1) the transaction of any business within this state;
>> . . .
>> (3) the commission of a tortious act within this state; . . .

> C. Only causes of action arising from acts enumerated in this section may be asserted against a defendant in an action within which jurisdiction is based upon this section.

NMSA 1978 § 38-1-16. New Mexico courts have equated the transaction of business and the commission of tort provisions of the New Mexico long-arm statute with the due process requirements for minimum contacts. *See Bennally v. Amon Carter Museum of Western Art*, 858 F.2d 618 (10th Cir. 1988). Thus, the personal jurisdiction inquiry collapses into a single due process inquiry.

When determining whether personal jurisdiction comports with the requirements of due process, a "court may exercise personal jurisdiction over a nonresident defendant only so long as there exists 'minimum contacts' between the defendant and the forum state." *World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 291 (1980) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316 (1945)). The Due Process Clause of the Fourteenth Amendment protects an individual's liberty interest in "not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.'" *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 319 (1945). This foreseeability requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts. *Burger King*, 471 U.S. at 475.

The "minimum contacts" standard may be met in two ways. *See OMI Holdings, Inc. v. Royal Ins. Co. of Canada,* 149 F.3d 1086, 1090 (10th Cir. 1998). First, a court may, consistent with due process, assert specific jurisdiction over a nonresident defendant "if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." *Burger King*, 471 U.S. at 472. Where a court's exercise of jurisdiction does not directly arise from a defendant's forum-related activities, the

court may nonetheless maintain general personal jurisdiction over the defendant based on the defendant's general business contacts with the forum state. *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415 (1984). However, "[b]ecause general jurisdiction is not related to the events giving rise to the suit, courts impose a more stringent minimum contacts test, requiring the plaintiff to demonstrate the defendant's continuous and systematic general business contacts." *OMI Holdings*, 149 F.3d at 1091 (internal quotations omitted).

Once a plaintiff has established that a defendant has minimum contacts with the forum state, the Court must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co. v. Superior Court of Cal.,* 480 U.S. 102, 113 (1987). This inquiry requires a determination of whether the exercise of personal jurisdiction is reasonable in light of the surrounding circumstances. *See id; see also Burger King* at 477-78. The determination of the reasonableness of the exercise of jurisdiction in each case will depend on an evaluation of several factors, such as 1) the burden on the defendant, 2) the forum state's interest in resolving the dispute, 3) the plaintiff's interest in obtaining relief, 4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and 5) the shared interest of the several States in furthering fundamental substantive social policies. *See Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir. 2000); *Asahi,* 480 U.S. at 113.

### B.    Deutsche Bank Defendants

Plaintiff Solv-Ex Corporation claims that former Morgan Grenfell Asset Management Ltd. employee, Peter Young, purchased tens of millions of dollars in Solv-Ex stock in an attempt to artificially inflate the price of that stock. Morgan Grenfell Asset Management Ltd. (Morgan Grenfell) is owned by Deutsche Bank AG, as is Deutsche Morgan Grenfell (DMG), another subsidiary. Together, these Defendants are referred to as the Deutsche Bank Defendants. Solv-Ex alleges that

Mr. Young's actions were in direct violation of a confidentiality agreement entered into between Solv-Ex and Mr. Young. Furthermore, Solv-Ex asserts that the Deutsche Bank Defendants secretly bought large amounts of Solv-Ex stock in order to recover from considerable losses suffered by Mr. Young's improper handling of investment portfolios. Thus, Solv-Ex claims that its stock value was artificially inflated and therefore vulnerable to mercurial market swings. Solv-Ex claims the resulting instability hurt investor confidence and contributed to Solv-Ex's inability to secure financing for the Alberta plant. As a result of Solv-Ex's inability to obtain financing for its Alberta plant, Solv-Ex was forced to seek protection in bankruptcy and ultimately brought this suit against the Deutsche Bank Defendants. In response, the Deutsche Bank Defendants deny that Mr. Young had the authority to enter into any confidentiality agreement on their behalf and argue that any harm caused by his actions is attributable solely to him. In addition, the Deutsche Bank Defendants argue that the actions of Mr. Young are in no way related to the actions of the Short Seller Defendants, and therefore, their inclusion in this suit is improper. Presently, through a series of motions, the Deutsche Bank Defendants now question this Court's personal jurisdiction over them. *See* Appendix A *(Docs. 16, 17, 19).*

In support of their motions to dismiss for lack of personal jurisdiction, the Deutsche Bank Defendants have submitted affidavits clarifying their relationships with the state of New Mexico. *See* Affidavit of John Jarvis, filed Aug. 16, 1999 *(Doc. 155)*; Declaration of Charles Benson at 2, attached to Morgan Grenfell's Motion to Dismiss, filed Aug. 16, 1999 *(Doc. 143)*; Declaration of Mary Owen at 2, attached to DMG's Motion to Dismiss, filed Aug. 16, 1999 *(Doc. 147)*; and Declaration of George R. Hornig at 1, attached to Deutsche Bank AG's Motion to Dismiss, filed Aug. 16, 1999 *(Doc. 139)*. From these affidavits, it is clear that the Deutsche Bank Defendants have not transacted business in New Mexico as contemplated by the New Mexico long-arm statute. Morgan Grenfell is

incorporated under the laws of the United Kingdom of Great Britain and Northern Ireland and has its principal place of business in London, England. *See* Declaration of Charles Benson at 2. DMG is incorporated under the laws of Delaware and has its principal place of business in New York. *See* Declaration of Mary Owen at 2. Deutsche Bank AG is organized under the laws of the Federal Republic of Germany with its principal place of business in Frankfurt, Germany. *See* Declaration of George R. Hornig at 1. None of the Deutsche Bank Defendants is licensed to do business in New Mexico, owns property or real estate in New Mexico, or advertises in any New Mexico publication, including the telephone book. *See* Declaration of Charles Benson at 2; Declaration of Mary Owen at 2; and Declaration of George Hornig at 2-3.

Solv-Ex has provided no information regarding the Deutsche Bank Defendants' business contacts with New Mexico, either through affidavits or the amended complaint, that contradict the information provided by the Deutsche Bank Defendants. Nonetheless, Solv-Ex alleges that Steven Armer of Morgan Grenfell made a two-day visit to Solv-Ex's facilities in Albuquerque under the premise of studying Solv-Ex technology for his supervisor Peter Young. *See* Plaintiff's Response to Defendant Morgan Grenfell Asset Management Ltd.'s Motion to Dismiss at 11, filed Aug. 16, 1999 *(Doc. 145)*. However, the confidentiality agreement entered into between Solv-Ex and Mr. Young was signed in London. Therefore, any dispute arising out of the agreement does not arise out of contacts with New Mexico. Furthermore, one visit to New Mexico is insufficient to create an inference that Morgan Grenfell maintained "continuous and systematic" general business contacts so as to render it subject to general jurisdiction. *See Helicopteros*, 466 U.S. 408, 415.

Similarly, Defendant DMG has only incidental business contacts with New Mexico. As a securities firm, DMG mails a limited number of prospectuses to securities purchasers in New Mexico pursuant to their role as an underwriter. *See* Declaration of Mary Owen at 2. Also, Solv-Ex's claims

do not arise out of DMG's role as an underwriter. Therefore, DMG's role as an underwriter is insufficient for personal jurisdiction in this case. Deutsche Bank AG is sued in its capacity as the parent company of Morgan Grenfell and DMG. However, Deutsche Bank has no more contacts with New Mexico than do its subsidiaries and likewise does not have sufficient minimum contacts with New Mexico for the exercise of personal jurisdiction. For these reasons, I find that the Deutsche Bank Defendants do not have minimum contacts with the state of New Mexico as a result of any business contacts as contemplated by the New Mexico long-arm statute.

Although the Deutsche Bank Defendants have no ascertainable business contacts with New Mexico, Solv-Ex relies on the "tortious conduct" element of the New Mexico long-arm statute to argue that the Deutsche Bank Defendants are subject to personal jurisdiction. Under New Mexico law, wrongful acts need not be committed within New Mexico in order to invoke New Mexico's long-arm statute. *See Roberts v. Piper Aircraft Corp.*, 100 N.M. 363, 366, 670 P.2d 974, 977 (Ct. App. 1983). Instead, a tortious act which occurs outside of New Mexico causing injury within the state may be sufficient to invoke the long-arm statute. *See id*. Under this theory, Solv-Ex alleges that the Deutsche Bank Defendants committed tortious acts that injured a New Mexico corporation in New Mexico and ultimately resulted in its having to file for bankruptcy. Specifically, Solv-Ex alleges that the Deutsche Bank Defendants participated in a scheme to intentionally destroy Solv-Ex by deliberately misusing and disclosing confidential information which originated in this state. *See* Plaintiffs' Response to Defendant Deutsche Morgan Grenfell, Inc.'s Motion to Dismiss at 9, filed Aug. 16, 1999 *(Doc. 149)*.

However, injury to a resident of the forum state is insufficient in itself to establish personal jurisdiction over a non-resident defendant where the resulting harm is purely economical. *See Resolution Trust Corp. v. McGlamery*, No. CIV 93-0292 JC/LFG (D.N.M. May 24, 1994),

-10-

appeal dismissed, 74 F.3d 218 (10th Cir. 1996). In addition, Plaintiff must demonstrate "activity indicating an *intent* to affect [the state's] interests." *See McIlwee v. ADM Indus., Inc.*, 17 F.3d 222, 224 (7th Cir. 1994) (emphasis added).[1] In this case, any resulting harm is purely economical. Accordingly, to establish personal jurisdiction over the Deutsche Bank Defendants, Solv-Ex must not only demonstrate they committed tortious acts which caused non-economic injury within New Mexico, Solv-Ex must also present facts showing the Deutsche Bank Defendants intended to affect New Mexico interests. *See id.*

In support of their position, Solv-Ex implores the Court to apply the mode of analysis used in *Calder v. Jones,* 465 U.S. 783 (1984). In *Calder,* entertainer Shirley Jones, a California resident, sued two employees of the *NATIONAL ENQUIRER.* The defendants, who wrote and edited an allegedly libelous article, were both Florida residents. The Court held that California was the focal point both of the article and of the harm suffered, and thus the California court could exercise jurisdiction over the defendants because of the California "effects" of the defendants' Florida conduct. *Id.* at 789. The Court concluded that because the defendants allegedly committed an intentional tort, knowing it would have a potentially devastating impact upon the plaintiff, and knowing that the plaintiff would be primarily injured in the state in which she lived and worked and in which the magazine had its largest circulation, the defendants must reasonably anticipate being haled in court there to answer for the truth of the statements made in their article. *See id.* at 789-90.

Solv-Ex argues that the present case falls under *Calder's* purview because the Deutsche Bank Defendants "knowingly directed and expressly aimed [their] tortious acts at a New Mexico corporation resident in [New Mexico] with reckless or deliberate intent to injure." Plaintiff's

---

[1] Because the New Mexico long-arm statute is modeled after that of the State of Illinois, Illinois court decisions are persuasive for matters of personal jurisdiction. *See Pelton v. Methodist Hosp.*, 989 F. Supp. 1392 (D.N.M. 1997).

Response to Morgan Grenfell's Motion to Dismiss at 9 *(Doc. 145)* (internal quotations omitted); Plaintiff's Response to Defendant Deutsche Bank AG's Motion to Dismiss at 9 *(Doc. 141)*; and Plaintiff's Response to Defendant DMG's Motion to Dismiss at 9 *(Doc. 149)*. Solv-Ex's reliance on *Calder* is misplaced. The mere allegation that an out of state defendant has committed an intentional business tort resulting in injury to a forum resident does not necessarily establish that the defendant intended to harm New Mexico. *See Wempe v. Sunrise Med. HHG, Inc.*, 61 F. Supp.2d 1165, 1170 (D. Kan. 1999). As the Supreme Court explained in *Burger King*, decided after *Calder*, "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Id.* 105 S. Ct. at 2183. Due process requires that it be foreseeable "that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there." *Id.* (quoting *World-Wide Volkswagen*, 444 U.S. at 297, 100 S. Ct. at 567).

In *Far West Capital Inc. v. Towne*, 46 F.3d 1071 (10th Cir. 1995), the Tenth Circuit considered the application of *Calder* to business torts. Following the majority of circuits, the Court adopted a narrow construction of *Calder*. The Court noted initially that *Calder* did not set forth a per se rule that the allegation of an intentional business tort alone is sufficient to confer personal jurisdiction in the forum where the plaintiff resides. *See id.* at 1078. Instead, the Court held that it must examine the "prior negotiations and contemplated future consequences along with the terms of the contract and the parties actual course of dealing" and "the contacts created by an out of state defendant in committing the tort." *Id.* at 1079-80. Because the Court held that the forum state had nothing but a fortuitous role in the parties' dealings, there was no evidence that the defendants' alleged torts had any connection to the forum state beyond its status as the plaintiff's corporate domicile. *See id.* at 1080. The Tenth Circuit held this was insufficient to establish personal

jurisdiction. *See id*. Hence, under *Far West*, Solv-Ex's showing must consist of more than just Solv-Ex's status as a New Mexico corporation.

Solv-Ex's allegations that the Deutsche Bank defendants sought to "jeopardize Solv-Ex's very corporate existence," are insufficient to show any intent to harm New Mexico interests. Plaintiffs' Response at 9 *(Doc. 145)*. Solv-Ex argues that the actions of Morgan Grenfell and the other Deutsche Bank Defendants had profound, foreseeable effects in this state, evidencing the Defendants' intent to cause harm to Solv-Ex and New Mexico's interests. *See id* at 10. However, though contemplated future consequences are a factor in the Court's due process analysis, *see Far West Capital*, 46 F.2d at 1079, foreseeability is not enough to establish personal jurisdiction when the injury is purely economical. *See Devenzeio v. Rucker, Clarkson & McCashin*, 121 N.M. 807, 811, 918 P.2d 723, 727 (Ct. App.), *cert denied*, 121 N.M. 783, 918 P.2d 369 (1996). Furthermore, Solv-Ex provides no evidence to support its allegations that the resulting harm was foreseeable. Solv-Ex alleges that the actions of the Deutsche Bank Defendants, together with the actions of the Short Seller Defendants, resulted in the vulnerability of Solv-Ex stock. However, there is no evidence that the Deutsche Bank Defendants even knew of the Short Seller Defendants. Nor is there evidence that the Deutsche Bank Defendants could foresee how their actions would affect Solv-Ex when taken in concert with the actions of the Short Seller Defendants. Solv-Ex points to no further evidence that Defendants' actions were expressly aimed to injure Solv-Ex or any other New Mexico interests.

In sum, Solv-Ex has failed to demonstrate that any alleged tortious acts were aimed at New Mexico or specifically at Solv-Ex based on Solv-Ex's status as a resident of New Mexico. Instead, any contacts with New Mexico were merely fortuitous and insufficient to establish personal jurisdiction. Furthermore, Solv-Ex has failed to demonstrate that the Deutsche Bank Defendants intended to harm New Mexico interests. I find that Solv-Ex has failed to establish that the Deutsche

Bank Defendants have minimum contacts with the state of New Mexico. However, even if the Deutsche Bank Defendants' limited contacts with New Mexico are sufficient to establish minimum contacts in this state, the exercise of personal jurisdiction over the Deutsche Bank Defendants would offend "traditional notions of fair play and substantial justice." *Asahi Metal Industry Co.*, 480 U.S. at 113.

The Deutsche Bank Defendants are residents of Europe and New York. While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction. *See World-Wide Volkswagen*, 444 U.S. at 292; *OMI Holdings*, 149 F.3d 1086, 1096. "This factor is of special significance, because it serves to prevent the filing of vexatious claims in a distant forum where the burden of appearing is onerous." *OMI Holdings*, 149 F.3d at 1096. When the defendant is from another country, this concern is heightened and "great care and reserve should be exercised" before personal jurisdiction is exercised over the defendant. *Asahi,* 480 U.S. at 114. Here, the witnesses and documentary evidence are far from New Mexico. The cost of litigation in New Mexico to the Deutsche Bank Defendants would be extreme. On the other hand, Solv-Ex has previously sued three of the Short Seller Defendants in New York federal court, demonstrating an ability and willingness to pursue their claims in another forum. Finally, the interests of the state of New Mexico would not be compromised by adjudication in another state since New Mexico's only interest in the case is that Solv-Ex is a New Mexico corporation, which alone is insufficient for the purposes of personal jurisdiction. Accordingly, personal jurisdiction by this Court over the Deutsche Bank Defendants would "offend traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment.

For the foregoing reasons, Plaintiffs have failed to establish a *prima facie* case of personal jurisdiction over the Deutsche Bank Defendants. Therefore, this Court cannot exercise personal jurisdiction over these Defendants, and the Deutsche Bank Defendants' motions to dismiss for lack of personal jurisdiction will be granted.

### C.    *Short Seller Defendants*

Plaintiffs Solv-Ex and Charter Oak also allege that a number of Defendants, the Short Seller Defendants, acted unlawfully to influence the market price of Solv-Ex stock in order to profit from short selling the stock. Plaintiffs allege that the Short Seller Defendants falsely represented to Solv-Ex and Charter Oak that they were interested in entering into negotiations for the purpose of providing financing for the Alberta Plant. *See* Plaintiff's First Amended Complaint at ¶¶ 32-33, 37. In response to representations made by some of the Short Seller Defendants, Solv-Ex entered into confidentiality agreements which were intended to reveal financing information. However, Plaintiffs claim that the Short Seller Defendants' intentions were false, and that Defendants Quilcap Corp., Zweig Advisors and Mikles/Miller Management, Inc., working in concert with Weir-Jones, Fahnestock Co., Rice Voelker and Trilling, lied in order to gain access to proprietary information. *See id.* Nevertheless, Solv-Ex entered into confidentiality agreements with Quilcap Corp., Zweig Advisors and Mikles/Miller Management, Inc. Plaintiffs claim that these Defendants then distributed proprietary information obtained from the confidentiality agreements to the other Short Seller Defendants in order to drive down the price of Solv-Ex stock so as to profit from "short selling" Solv-Ex stock. Short selling stock involves the strategic buying and selling of stock in order to take advantage of market changes. It is a high risk financial venture in which the short seller sells stock he does not own with expectations that the market price of the stock will drop before the date of sale, resulting in a profit for the short seller. If the stock price does not fall, the short seller may lose

money or make no profit at all. Plaintiffs allege the Short Seller Defendants succeeded in driving down the price of Solv-Ex stock, thereby damaging Solv-Ex's opportunity to secure financing for its Alberta plant. Plaintiffs contend that the failed financing negotiations and the subsequent stock fluctuations led to Solv-Ex's eventual bankruptcy.

Like the Deutsche Bank Defendants, the Short Seller Defendants now question this Court's personal jurisdiction over them. *See* Appendix A *(Docs. 71, 75, 79, 96 and 99)*. In support of their motions to dismiss for lack of personal jurisdiction, the Short Seller Defendants have submitted affidavits describing their relationships with Solv-Ex, Charter Oak, and the state of New Mexico establishing that none of the Short Seller Defendants reside in, are incorporated in, or operate their principal place of business in New Mexico. *See* Appendix B.

The notion of purposeful availment requires more than mere investment in a company incorporated in the forum state. *See Burger King*, 471 U.S. 462, 475. Furthermore, while short selling stock is arguably transacting business for the Short Seller Defendants, the actual transfer of Solv-Ex stock did not occur in New Mexico. The mere transfer of a company's stock is too tenuous a contact to subject a party to personal jurisdiction in the company's state of residence. Accordingly, the Short Seller Defendants are not subject to personal jurisdiction in New Mexico merely because the stock involved was that of a New Mexico corporation. In addition, the confidentiality agreements signed by Solv-Ex and Defendant Quilcap Corporation, through Defendant Parker Quillen, Defendant Zweig Advisors, Inc., through Defendant Martin Zweig, and Defendant Mikles/Miller Management, Inc., through Defendant Mark Miller were signed outside of New Mexico. Therefore, the Short Seller Defendants did not transact business in New Mexico under the long-arm statute by entering into an agreement with a New Mexico corporation. Finally, the Short Seller Defendants, with the

exception of Paine Webber Group, Inc., do not otherwise advertise or operate in New Mexico.[2]

Thus, I find that the Short Seller Defendants do not have sufficient contacts under the transacting business requirement of the New Mexico long-arm statute.

Solv-Ex and Charter Oak concentrate their personal jurisdiction argument on the "tortious conduct" element of the New Mexico long-arm statute. Like the transfers of Solv-Ex stock, the purported financing negotiations did not take place in New Mexico. Instead, the financing discussions took place over the telephone, most often between Defendants and Charter Oak, a resident of California. Although a few phone calls were made between Defendants and Solv-Ex in New Mexico, the use of mails, fax, or telephone have repeatedly been held insufficient to support personal jurisdiction. *See Far West,* 46 F.3d 1071, 1077*; Sanchez v. Church of Scientology of Orange Cty.*, 115 N.M. 660, 664 (1993). Furthermore, a few phone calls made by one or two of the Short Seller Defendants cannot serve as the basis for personal jurisdiction over all 18 Short Seller Defendants. No single Defendant participated in communications with Solv-Ex in New Mexico sufficient to warrant a finding of minimum contacts. In addition, only a single visit was made by any of the Short Seller Defendants to New Mexico. Namely, Mark Miller of Mikles/Miller Management, Inc. made a visit to Albuquerque on February 8, 1996, during which Solv-Ex believed that Mr. Miller was a serious prospective investor. *See* Declaration of John S. Rendall, filed May 21, 1999 *(Doc. 102)*. The trip lasted less than a day, involving only a few hours of contact with Solv-Ex. *See* Affidavit of Mark Miller at ¶¶ 15-18, attached as Ex. B to Mikles/Miller Defendants Motion to

---

[2] The claims against the Paine Webber Group allege that Stanley Trilling, the senior vice-president of the Los Angeles office of Paine Webber, participated in Internet exchange with other Short Seller Defendants regarding Solv-Ex. *See* Plaintiffs' Response to the Paine Webber Defendants' Motion to Dismiss at 17, filed May 21, 1999 *(Doc. 112)*. These allegations do not relate to Paine Webber's business in New Mexico and therefore, even though Paine Webber may "transact business" in New Mexico, the cause of action does not arise out of that business. Therefore, though Paine Webber may transact business in New Mexico, these contacts are insufficient to render the company subject to jurisdiction in this state for the claims brought by Solv-Ex and Charter Oak.

Dismiss for Lack of Personal Jurisdiction, filed May 21, 1999 *(Doc. 100)*. I find these actions insufficient to establish the commission of a tortious act within New Mexico pursuant to the New Mexico long-arm statute.

Plaintiffs also allege that the exchange of confidential information conceived in New Mexico forms the basis for tortious conduct in this state. *See* Declaration of Herbert M. Campbell, filed May 21, 1999 *(Doc. 102)*. Specifically, Plaintiffs assert that Defendant Stanley Trilling began sharing information with Parker Quillen in December of 1995 and that Parker Quillen met with George Voelker in early January of 1996. *See* Exs. 4 and 5 attached to Declaration of Herbert M. Campbell. However, that the information may have been created, formed or originated in New Mexico does not render discussions regarding the information subject to a lawsuit in this state. Meetings between companies or employees in which a New Mexico company is merely discussed do not subject the parties to personal jurisdiction where there is no further contact with the state. Furthermore, there is no evidence or claim that any exchange of information took place in, passed through or otherwise contacted New Mexico. *But c.f., Intercon, Inc. v. Bell Atlantic Internet Solutions, Inc.*, 205 F.3d 1244 (10th Cir. 2000) (personal jurisdiction comports with due process where non-resident defendant knew that e-mail was being routed through forum state and took no action to rectify situation).

Plaintiffs also contend that a number of press releases were issued regarding Solv-Ex stock resulting in unfavorable articles regarding Solv-Ex's processes. *See* Ex. 1, attached to Notice of Removal, filed January 4, 1999 *(Doc. 1)*. However, press releases about a publicly traded company do not alone constitute sufficient contacts with the company's state of residence, and Plaintiffs have provided no additional evidence to explain how the press releases suffice to establish minimum contacts in the forum state. Unlike *Calder*, in which the defamatory information was specifically published in the plaintiff's home town, there is no evidence that the press releases were made in any

New Mexico publication or that the information was heard or seen by anyone in New Mexico. Thus, these actions are also insufficient to support an allegation of tortious conduct committed in the forum state.

Finally, Plaintiffs contend that the Short Seller Defendants disseminated information about Solv-Ex over the Internet. Merely maintaining a website on the Internet, a world-wide system cannot, without more, satisfy the "purposefully availing" element. *See Mink v. AAAA Development LLC*, 190 F.3d 333, 337 (5th Cir.1999) (the presence of an electronic mail access, a printable order form, and a toll-free phone number on a website is insufficient to establish personal jurisdiction). Therefore, an analysis of the nature of the Internet activity is necessary for a determination of the minimum contacts.

In this case, there are two types of Internet activity. First, some Short Seller Defendants exchanged e-mail discussing Solv-Ex. *See* Exs. 6-10 attached to Declaration of Herbert M. Campbell. E-mail is typically seen only by the exchanging parties. These e-mail exchanges were between employees of companies not located in New Mexico. Therefore, they are not sufficient to establish personal jurisdiction in New Mexico under either the business contacts or tortious conduct requirements of the New Mexico long-arm statute. Second, Plaintiffs allege that some Short Seller Defendants placed information about Solv-Ex on Internet discussion boards. *See* Exs. 11-24 attached to Declaration of Herbert M. Campbell. On an Internet board, a person can "post" messages for others to read and others may respond by posting their own message. Posts are visible to anyone with access to the board, whether or not directed to a specific recipient. Thus, it is conceivable that New Mexico residents are able to view the information posted by Short Seller Defendants discussing Solv-Ex stock. However, there is no evidence thus far that any New Mexico resident did indeed see the messages or participate in the discussion boards. The messages were presented as opinions in the

midst of a larger discussion concerning many different stocks. There was no opportunity for purchase or sale of stock on the site and no method of contacting the participants other than through the discussion board. Therefore, without determining whether the Internet activity rose to the level of tortious conduct, I find that the acts were not committed in New Mexico as contemplated by either the business contacts or tortious conduct requirements of the long-arm statute. For the foregoing reasons, I find that Plaintiffs have failed to demonstrate that the Short Seller Defendants have minimum contacts under the New Mexico long-arm statute through either the commission of a tortious act within the state or through sufficient business contacts in the state.

Nevertheless, a tortious act which occurs outside of New Mexico causing injury within the state may be sufficient to invoke the long-arm statute. *See Roberts v. Piper Aircraft Corp.*, 100 N.M. at 365, 670 P.2d at 976. Accordingly, Plaintiffs contend that regardless of where they were committed, the Short Seller Defendants' tortious acts contributed to Solv-Ex's financial demise and ultimate bankruptcy in New Mexico. However, Plaintiffs have merely demonstrated that the Short Seller Defendants were short selling stock without regard for the consequences. The e-mails and correspondence between the Short Seller Defendants indicate nothing more than a desire to make money short selling stock. Short selling stock is not illegal, and Plaintiffs have failed to show that the information distributed by Short Seller Defendants was in any way false or motivated by bad faith. In addition, the confidentiality agreements were not signed in New Mexico. Therefore, this Court is not convinced that the Short Seller Defendants committed tortious acts resulting in harm in New Mexico.

Regardless, taking each of Plaintiffs' allegations as true, because the alleged injury is economic, Plaintiffs must also demonstrate that the Short Seller Defendants intended to affect New Mexico interests. *See McIlwee,* 17 F.3d 222, 224. Here, the forum state had nothing but a

fortuitous role in the parties' dealings, and there is no evidence that the Defendants' actions have any connection to New Mexico beyond the status of Solv-Ex's state of residency. *See Far West Capital Inc. v. Towne,* 46 F.3d at 1080. In fact the information exchanged by the Short Seller Defendants and the press releases do not mention that Solv-Ex is a New Mexico corporation. In any case, it is not sufficient for the Short Seller Defendants merely to have known that Solv-Ex was a New Mexico corporation. *See id.* Thus, while Plaintiffs have alleged significant injury to Solv-Ex, there is no evidence that the injuries were in some way meant to harm Solv-Ex, let alone New Mexico.

Nonetheless, Plaintiffs maintain that the Short Seller Defendants were aware of the effect their actions would have on the integrity of Solv-Ex and that by proceeding, the Short Seller Defendants demonstrated an intent to inflict economic harm on a New Mexico company. Contemplated future consequences are a factor in the due process analysis. *See Far West Capital*, 46 F.2d at 1079. However, foreseeability is not enough to establish personal jurisdiction when the injury is purely economical. *See Devenzeio*, 121 N.M. 807, 811, 918 P.2d 723, 727. In this case, Plaintiffs allege that the actions of Short Seller Defendants merely contributed to the vulnerability of Solv-Ex stock. Thus, it is unlikely that the Short Seller Defendants could foretell the eventual unfolding of Solv-Ex's bankruptcy. Therefore, the Short Seller defendants could not reasonably be expected to be sued in New Mexico based on the combination of events that occurred. On that basis, Plaintiffs have failed to show that the Short Seller Defendants are subject to personal jurisdiction in this state.

For the foregoing reasons, Plaintiffs have failed to establish minimum contacts sufficient for the exercise of personal jurisdiction over the Short Seller Defendants. As the Short Seller Defendants do not have sufficient minimum contacts with the forum state for this Court to exercise jurisdiction, there is no need to consider whether "the exercise of personal jurisdiction over the defendant[s] offends traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.*, 480 U.S.

at 113; *OMI Holdings*, 149 F.3d at 1091. However, even if the Short Seller Defendants' limited contacts with New Mexico are sufficient to establish minimum contacts in this state, it would be unreasonable to require that the Short Seller Defendants defend themselves in a New Mexico court.

On one hand, it would be efficient and judicially economical to sue all the Short Seller Defendants in one forum. However, Solv-Ex has previously sued three of the Short Seller Defendants in New York federal district court, demonstrating an ability and willingness to pursue their claims in another forum, whereas the Short Seller Defendants would be required to bear the burden of adjudication in this forum, despite their limited contact with New Mexico. The interests of the state of New Mexico would not be compromised by adjudication in another state since New Mexico's only interest in the case is that Solv-Ex is a New Mexico corporation, which alone is insufficient for the purposes of personal jurisdiction. Accordingly, personal jurisdiction by this Court over the Short Seller Defendants would "offend traditional notions of fair play and substantial justice" under the Due Process Clause of the Fourteenth Amendment. For the foregoing reasons, Plaintiffs have failed to establish a *prima facie* case of personal jurisdiction over the Short Seller Defendants. Therefore, this Court cannot exercise personal jurisdiction over these Defendants, and the Short Seller Defendants' motions to dismiss for lack of personal jurisdiction will be granted.

**D.    *Conspiracy as a Basis for Personal Jurisdiction***

As an additional basis for personal jurisdiction, the Tenth Circuit has recognized that the acts of co-conspirators, performed in the forum state in furtherance of a conspiracy, may constitute sufficient minimum contacts to establish personal jurisdiction over co-conspirators who have no other contact with the forum. *See American Land Program, Inc. v. Bonaventura Uitgevers Maatschappij*, 710 F.2d 1449, 1454 (10th Cir. 1983); *Baldridge v. McPike,* 466 F.2d 65, 68 (10th Cir. 1972). Plaintiffs rely on the co-conspirator theory as one basis for personal jurisdiction over the Short Seller

Defendants in this case. However, "mere allegations of conspiracy, without some sort of prima facie factual showing of a conspiracy, cannot be the basis of personal jurisdiction of co-conspirators outside the territorial limits of the court." *Baldridge,* 466 F.2d 65, 68.

To make a *prima facie* showing of conspiracy, a plaintiff must produce facts showing 1) that a conspiracy between two or more individuals existed; 2) that specific wrongful acts were carried out by the defendants pursuant to the conspiracy; and 3) that the plaintiff was damaged as a result of such acts. *See Silva v. Town of Springer,* 121 N.M. 428, 434, 912 P.2d 304, 310 (Ct. App. 1996). A conspiracy is established by evidence of each alleged co-conspirator's acts, conduct and statements and the totality of conduct of all the participants and the reasonable inference to be drawn therefrom. *C.f. Las Luminarias of the N.M. Council of the Blind v. Isengard,* 92 N.M. 297, 300, 587 P.2d 444, 447 (Ct. App. 1978). In this case, Plaintiffs point to a number of discussions by and between Short Seller Defendants regarding Solv-Ex and its stock. However, these allegations are insufficient to establish a prima facie showing that the Short Seller Defendants were involved in a conspiracy to manipulate the price of Solv-Ex stock. There is no evidence that any of the Defendants entered into any agreement to commit a tortious or unlawful act. The association of various persons assembled together to discuss common aims does not necessarily establish proof of the existence of a conspiracy. *See United States v. Metropolitan Enters., Inc.*, 728 F.2d 444, 452 (10th Cir. 1984). Plaintiffs allege that the tenor of the discussions between the Short Seller Defendants indicates that there was an intent to do harm to Solv-Ex by disseminating negative information about Solv-Ex stock. However, the e-mails and discussions cited by Plaintiffs are merely opinions about the relative value of Solv-Ex stock. If such discussions were sufficient to prove a conspiracy, then every person in the securities industry would be a potential conspirator. The customary exchange of information between persons in the securities industry does not amount to conspiracy merely because the information reflects a

negative opinion. Therefore, Plaintiffs have failed to make a colorable showing of a conspiracy among the Short Seller Defendants.

Accordingly, Plaintiffs have not established personal jurisdiction over any of the Defendants based on a conspiracy theory of minimum contacts. Nevertheless, even if the plaintiffs had established a conspiracy, given that each of the Defendants was found to lack minimum contacts with the forum state, there remains no one Short Seller Defendant whose acts within the state of New Mexico could be attributed to another defendant. Therefore, Plaintiffs' argument is not well taken.

### E.   *Plaintiffs are not Entitled to Further Discovery*

In the event that the Court found the Plaintiffs unable to demonstrate a *prima facie* showing of personal jurisdiction over Defendants, Plaintiffs have requested limited discovery for the purposes of jurisdictional issues only.

The district court is given discretion in determining the procedure to employ in considering a motion to dismiss for lack of jurisdiction, and "may gather evidence on the question of jurisdiction by affidavits or otherwise in an effort to determine the facts as they exist." *See Ten Mile Indus. Park v. Western Plains Serv. Corp.*, 810 F.2d 1518, 1524 (10th Cir.1987) (quotations omitted); *see also Budde v. Ling-Temco-Voight*, 511 F.2d 1033, 1035 (10th Cir. 1975) (trial court has "broad discretion" to allow either party to conduct discovery on the factual issues raised by a motion to dismiss for lack of personal jurisdiction). For example, "[the court] may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454,1458 (6th Cir.1991). The court will only be reversed for abuse of discretion. *See id; Wells Fargo & Co. v. Wells Fargo Exp. Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977). In the absence of an evidentiary hearing, the burden on the plaintiff "is somewhat lessened in that the trial court will

consider the affidavits in the light most favorable to the plaintiff." *Doe v. Roman Catholic Diocese of Boise, Inc.*, 121 N.M. 738,742, 918 P.2d 17, 21 (Ct. App. 1996) (quoting *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988)).

A plaintiff is not however always entitled to such discovery. In many cases, courts have denied or limited discovery on jurisdictional issues where the plaintiff has failed to make some threshold showing of plausible basis for exercising jurisdiction over the defendant. *See, e.g., Lehigh Valley Indus., Inc. v. Birenbaum*, 527 F.2d 87, 93-94 (2d Cir. 1975); *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 787 (D.C. Cir. 1983). Requiring a threshold basis for exercising jurisdiction is consistent with both the purpose of the due process requirement of minimum contacts, and the district court's obligation to control discovery under Rule 26(b)(2). "A plaintiff cannot be permitted to effect service on an out-of-state defendant on the mere basis that such plaintiff hopes somehow and somewhere to find enough facts to create grounds for jurisdiction." *See Socialist Workers Party v. Attorney Gen.*, 375 F. Supp. 318, 325 (S.D.N.Y. 1974). Where a plaintiff seeks to subject a distant defendant to discovery in order to determine whether sufficient contacts support jurisdiction, it is reasonable for a court to expect the plaintiff to show a colorable basis for jurisdiction before subjecting the defendant to intensive and burdensome discovery in that distant forum.

This case was filed over one year ago. Also, Plaintiffs filed a similar case against some of the same Defendants in New York over two years ago. Thus, Plaintiffs have had substantial time and motivation to conduct an inquiry into the details of Defendants' actions and Defendants' contacts with the state of New Mexico. The Court recognizes that the parties have not conducted official discovery in this case; however, given the overwhelming lack of evidence to support personal jurisdiction in this case, Plaintiffs have failed to produce a threshold showing for jurisdiction over the Defendants. Furthermore, Plaintiffs' requests for discovery are broad and unspecific, indicating that

Plaintiffs are not even sure what they hope to find. Therefore, because the Court believes that Plaintiffs' request would be fruitless, Plaintiffs' prayer for limited jurisdictional discovery is denied.

## III. Plaintiffs' Motion to Amend Complaint

In answer to a number of motions to dismiss for lack of personal jurisdiction, Plaintiffs filed a Motion to Amend Their Complaint [Second] on July 12, 1999 *(Doc. 132)*. The motion proposes five bases for amendment. *See id.* at 2. First and foremost, Plaintiffs seek to add jurisdictional facts to address the arguments raised by Defendants' Motions. *See id.* The other changes seek to add causes of action.

The Federal Rules of Civil Procedure provide that leave to amend "shall be freely given when justice so requires." FED. R. CIV. P. 15(a).[3] Consequently, the District Court should deny leave to amend only when it finds "undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Frank v. U S West, Inc.*, 3 F.3d 1357, 1365 (10th Cir.1993). Regardless, "the grant or denial of an opportunity to amend is within the discretion of the District Court." *Foman v. Davis*, 371 U.S. 178, 182 (1962); *see also Gillette v. Tansy*, 17 F.3d 308, 312 (10th Cir.1994). An abuse of discretion may be found only when the district court has made an "arbitrary, capricious, whimsical, or manifestly unreasonable judgment." *FDIC v. Oldenburg*, 34 F.3d 1529, 1555 (10th Cir.1994).

According to Plaintiffs' Motion to Amend the Complaint, the jurisdictional facts Plaintiffs seek to add were previously articulated in Plaintiffs' responses to Defendants' motions to dismiss. *See* Plaintiffs' Motion to Amend Their Complaint [Second] at 2 *(Doc. 132)*. In confronting Defendants' motions to dismiss for lack of personal jurisdiction, this Court considered all documents

---

[3] A federal court sitting in diversity applies its own procedural law. *See Boyd Rosene and Assocs., Inc. v. Kansas Mun. Gas Agency*, 174 F.3d 1115, 1118 (10th Cir. 1999).

thus far submitted to the court. Therefore, Plaintiffs' proposed amended complaint would not change the personal jurisdiction analysis conducted by the Court. As Plaintiffs' proposed additional claims would also be dismissed for lack of personal jurisdiction, an amended complaint would not change the disposition of the case. Therefore, Plaintiffs' motion to amend the complaint is hereby denied as futile.

## CONCLUSION

This case has a great number of outstanding motions. Hence, it is essential that this Court first have jurisdiction to decide the substantive issues. An analysis of personal jurisdiction was the less arduous, therefore, that issue was addressed first. After an extensive examination of the quantity and quality of the Defendants' contacts with the forum state of New Mexico, the Court determines that the Defendants do not have minimum contacts sufficient to establish personal jurisdiction under the New Mexico long-arm statute and the due process clause. Also, the exercise of personal jurisdiction over the Defendants would offend the traditional notions of fair play and substantial justice, further precluding personal jurisdiction over the Defendants in this case.

Plaintiffs' attempt to establish jurisdiction based on the minimum contacts of a co-conspirator is likewise not well taken for two reasons. First, Plaintiffs failed to make a colorable showing of a conspiracy. Second, even if a conspiracy existed, no single Defendant has sufficient minimum contacts upon which to base personal jurisdiction.

Though Plaintiffs requested additional discovery on the subject of personal jurisdiction, the Court finds that it is not warranted given the time that has passed since the initial filing of this case and the lack of specificity in Plaintiffs' request. In addition, Plaintiffs' request to amend their complaint to address Defendants' personal jurisdiction arguments is denied as futile since the Court considered the proposed additional facts when deciding the personal jurisdiction motions. Because

the case is dismissed for lack of personal jurisdiction, Plaintiffs' request to amend the complaint to include additional claims would also be futile. Given the lack of personal jurisdiction over the Defendants, this Court does not have jurisdiction to hear the case. Therefore, all other outstanding motions are denied as moot.

Wherefore,

IT IS HEREBY ORDERED that Defendants' Motions to Dismiss for Lack of Personal Jurisdiction *(Docs. 71, 75, 79, 99, 96, 143, 147 and 139)* are **granted**.

IT IS FURTHER ORDERED that Plaintiffs' Motion to Amend Their Complaint, filed July 12, 1999 *(Doc. 132)*, is **denied**.

IT IS FINALLY ORDERED that all other motions are **denied** as moot.

DATED this 2nd day of May, 2000.

**CHIEF UNITED STATES DISTRICT JUDGE**

| | | |
|---|---|---|
| *For Solv-Ex Corp., John D.*<br>*Hentschel, d/b/a Charter Oak*: | Rex D. Throckmorton<br>Henry M. Bohnhoff<br>Rodey, Dickason, Sloan,<br>Akin & Robb, P.A.<br>Albuquerque, New Mexico | R. Paul Yetter<br>Autry W. Ross<br>Yetter & Warden, L.L.P.<br>Houston, Texas |
| *For Parker Quillen, Quilcap,*<br>*Weir-Jones Eng'g Consultants*: | John M. Eaves<br>John G. Baugh<br>Eaves, Bardacke & Baugh, P.A.<br>Albuquerque, New Mexico | Lawrence T. Hoyle<br>Arlene Fickler<br>Hoyle, Morris & Kerr, L.L.P.<br>Philadelphia, Pennsylvania |
| *For George Voelker, Tim Rice,*<br>*Rice, Voelker Bros. & Frantzen*: | Robert J. Mroz<br>Madison, Harbour, Mroz &<br> Brennan, P.A.<br>Albuquerque, New Mexico | George C. Freeman<br>Stone, Pigman, Walther, Wittman &<br> Hutchinson, L.L.P.<br>New Orleans, Louisiana |
| *For Deutsche Bank AG,*<br>*Deutsche Morgan Grenfell,*<br>*Inc., Morgan Grenfell Asset*<br>*Management Ltd.*: | John R. Cooney<br>Charles A. Armgardt<br>Modrall, Sperling, Roehl,<br> Harris & Sisk. P.A.<br>Albuquerque, New Mexico | Jeffrey Barist<br>Duncan J. Logan<br>Milbank, Tweed, Hadley & McCloy<br>New York, New York |
| *For Stanley Trilling, Trilling*<br>*Partners, Paine Webber,*<br>*Group*: | Jeffrey R. Brannen<br>Larry D. Maldegen<br>Comeau, Maldegen, Templeman<br> & Indall, L.L.P.<br>Santa Fe, New Mexico | Janet Gochman<br>Paine Webber, Inc.<br>New York, New York |
| *For Michelle Sarian and*<br>*Fahnestock & Co., Inc.*: | David F. Cunningham<br>White, Koch, Kelly &<br> McCarthy<br>Santa Fe, New Mexico | Eric Shames<br>Fahnestock & Co., Inc.<br>New York, New York |
| *For Manuel Asensio and*<br>*Asensio & Co., Inc.*: | Gary S. Friedman<br>Cassutt, Hays & Friedman, P.A.<br>Santa Fe, New Mexico | Todd A. Prins<br>Law Offices of Todd A. Prins<br>San Antonio, Texas |
| *For Lee Mikles, Mark*<br>*Miller and Mikles/Miller*<br>*Management, Inc.*: | Charles A. Pharris<br>Keleher & McLeod, P.A.<br>Albuquerque, New Mexico | |
| *For Martin Zweig and Zweig*<br>*Advisors*: | James O. Browning<br>Cerianne L. Mullins<br>Browning & Peifer, P.A.<br>Albuquerque, New Mexico | Robert E. Smith<br>Howard Wilson<br>Rosenman & Colin, L.L.P.<br>New York, New York |